# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: November 17, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| ROBERT DAVID DUPUCH-CARRON | * | |
| *and* ELIZABETH JOANNA CARRON, | * | |
| *as the legal representatives of the estate of* | * | |
| *their minor son,* A.R.D-C., | * | PUBLISHED |
| | * | |
| Petitioners, | * | No. 17-1551V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Final Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Reasonable basis. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

Curtis R. Webb, Curtis R. Webb, Twin Falls, ID, for petitioners.
Julia M. Collison, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On December 20, 2021, Robert David Dupuch-Carron and Elizabeth Joanna Carron, as the legal representatives of the estate of their minor son, A.R.D.-C. ("petitioners"), filed an application for final attorneys' fees and costs. Petitioner's Fee Application ("Fee App.") (ECF No. 50). For the reasons discussed below, I **GRANT** petitioner's motion and find that a reasonable final award of attorneys' fees and costs is $430,376.02.

### I.  Procedural History

On October 17, 2017, petitioners filed a petition pursuant to the National Vaccine Injury Compensation Program. Petitioners alleged that the death of their minor child, A.R.D.-C., was

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

caused by the Infanrix Hexa (DTaP, Hepatitis B, Inactivated Poliovirus, Hemophilus Influenza Type B), Prevnar (Pneumococcal Conjugate) and Rotateq (Rotavirus) vaccines that were administered on June 23, 2016 in Nassau, The Bahamas. Petition (ECF No. 1). The petitioner submitted medical records to accompany the petition. Petitioner's ("Pet.") Exhibits ("Ex.") 3-10.

The petitioners are the legal representatives of the estate of their minor son, A.R.D-C. The family is domiciled in The Bahamas. Ms. Carron carried A.R.D.C. *in utero* upon five visits to the United States. On November 24, 2015, A.R.D.C. was born in The Bahamas. On June 23, 2016, A.R.D.C. received DTaP, IPV, HIB, HBV, Prevnar, and rotavirus vaccines at his pediatrician's office in The Bahamas. He remained in The Bahamas until July 13, 2016, when he was transported to the United States for treatment for secondary hemophagocytic lymphohistiocytosis ("HLH"). A.R.D.C. later developed secondary complications and passed away in the United States on December 24, 2017. On October 7, 2017, petitioners initiated a claim within the National Vaccine Injury Compensation Program, alleging that A.R.D-C.'s March 26, 2016 vaccines caused his injuries and death.[2] Petition (ECF No. 1); *see also* Amended Petition filed March 26, 2018 (ECF No. 15).

An initial status conference was held in the case on December 4, 2017. Status Conference Order (NON-PDF, December 1, 2017). The court and parties agreed that because A.R.D.-C *had received the vaccinations outside of the United States*, the court should address the question of whether he was eligible for compensation under 42 USC § 300aa-11(c)(1)(B)(i)(III) before the case was further developed. *See* Scheduling Order dated 12/04/2017, Docket No. 9. Accordingly, I ordered the parties to file cross motions for summary judgment on the issue of eligibility for compensation through the National Vaccine Injury Compensation Program. Scheduling Order (ECF No. 9).

On March 26, 2018, petitioners filed a motion for partial summary judgment, arguing that A.R.D.-C. was eligible for compensation. Pet. Motion ("Mot.") (ECF No. 11). Respondent filed a cross-motion for summary judgement and a response to petitioner's motion on June 7, 2018 (ECF No. 18). On July 12, 2018, petitioner filed a reply to respondent's motion. Pet. Reply (ECF No. 21).

On April 23, 2019, I issued a Decision finding that A.R.D.-C. was ineligible for compensation under 42 U.S.C. § 300aa-11(c)(1)(B)(III). Decision (ECF No. 24). Petitioners filed a motion for review on May 23, 2019. Pet. Mot. for Review (ECF No. 25). On September 10, 2019, the Court of Federal Claims also held that A.R.D.-C. did not "return" to the United States within six months of receiving the vaccinations, and denied petitioner's motion for review. *See Dupuch-Carron v. Sec'y of Health & Human Servs.,* No. 17-1551V, 2019 WL 2263369 (Fed. Cl. Spec. Mstr. Apr. 23, 2019), *rev. denied,* 144 Fed. Cl. 659 (2019).

Petitioners filed a timely appeal to the Federal Circuit Court of Appeals, which heard oral arguments on July 7, 2020. On August 11, 2020, the Federal Circuit affirmed the lower court's ruling. ECF No. 46. On October 13, 2020, counsel Mr. Curtis Webb, moved to withdraw as

---

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "the Vaccine Act" or "the Act").

counsel for petitioner Mr. Robert David Dupuch-Carron, while indicating that he would continue as counsel for petitioner Ms. Elizabeth Joanna Carron. Both petitioners Ms. Elizabeth Joanna Carron and petitioner Mr. Robert David Dupuch-Carron filed a petition for rehearing *en banc*. The petitions for rehearing were referred to the panel that heard the appeal, and thereafter, the petitions for rehearing *en banc* were referred to the circuit judges in regular active service. On November 19, 2020, the petitions for panel rehearing and rehearing *en banc* were denied and the Federal Circuit issued its mandate on November 30, 2020. (ECF No. 48). *Dupuch-Carron v. Sec'y of Health & Human Servs.,* 969 F.3d 1318 (Fed. Cir. 2020) *cert. denied sub nom. Dupuch-Carron v. Becerra,* 142 S. Ct. 77, 211 L. Ed. 2d 14 (2021).

On April 20, 2021, petitioners filed a petition for writ of certiorari in the United States Supreme Court, which was denied on October 4, 2021, without comment. *See Dupuch-Carron v. Becerra,* 142 S.Ct. 77 (Mem), 211 L.Ed2d 14 (2021).

On December 20, 2021, petitioners filed the instant motion for final attorneys' fees and costs. Fees App. Petitioner is requesting a total of $430,376.02 in attorneys' fees and costs. Fees App. at 1. Respondent filed a response to petitioner's attorneys' fees motion, stating that "…at a minimum, petitioner's lost reasonable basis when the Federal Circuit denied rehearing *en banc* on November 19, 2020. At that point in time, petitioner's jurisdictional argument had been unanimously rejected by a special master, a judge in the Court of Federal Claims, a three-judge panel of judges at the Federal Circuit Court of Appeals, and the reviewing body for rehearing *en banc*. Petitioners had no reasonable basis to believe their jurisdictional argument would fare differently at the U.S. Supreme Court. Counsel accepted the risk of not being reimbursed for fees when embarking on a project he knew was very likely to be futile, and accordingly, should not be reimbursed for his efforts [after] the denial of rehearing *en banc* on November 19, 2020." Respondent's ("Resp.") Response at 5-6 (ECF No. 52). The respondent also "recommends that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs, if any." *Id.* at 7.

Petitioners filed a reply to respondent's response on January 6, 2022. Pet. Reply (ECF No. 53). Petitioners stated that they "disagree" with respondent's position and that the petitioners did not lose reasonable basis when the Federal Circuit denied their petition for rehearing *en banc*. *Id.* at 3. Petitioner stated that their claim "presented legal questions of first impression. Those questions merited review by all of the courts with jurisdiction to review their claim." *Id.* at 3. Additionally, petitioners argued that "it is reasonable for a party to seek review from the Supreme Court in a case in which a court of appeals has established an authoritative interpretation of a federal statute." *Id.* The petitioners argue, "The Supreme Court's rules say that a case in which "….a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court" may be appropriate for a review through a Petition for a Writ of Certiorari." *Id.* (citing U.S. Supreme Court Rule 10(c)). Petitioners aver that it was reasonable for them to seek the Supreme Court's review of the Federal Circuit's decision because, "The Federal Circuit panel that decided the petitioners' case had not considered the Supreme Court's decision in *Bostock v. Clayton County,* 140 S.Ct. 1731 (2020), and…[a] review of the Federal Circuit's decision by the Supreme Court was the only way to address a decision that denied the petitioners, and other similarly situated person, access to the National Vaccine Injury Compensation Program." Pet. Reply at 4. Further, petitioners

argue, "Given the *Bostock* decision….it was reasonable for the petitioners to believe that the Supreme Court may have chosen to rely on the plain language of 42 U.S.C. § 300aa-11(c)(1)(B)(i)(III), rather than the interpretation of the Vaccine Act adopted by the Federal Circuit had it agreed to review the petitioner's case." *Id.*

Petitioners also state that other cases in which petitioners have petitioned for writs of certiorari and the writs were denied, attorneys fees and costs associated with the failed writs of certiorari have been granted. *Id.* at 5. Petitioner stated that attorneys' fees and costs incurred for an unsuccessful writ of certiorari was granted in the *Hammitt* case. *Id.* at 5 (citing *Hammitt v. Sec'y of Health & Human Servs.,* No 07-170V (Fed. Cl. Spec. Mstr. June 19, 2007). In that case, the attorneys' fees and costs were awarded pursuant to a stipulation submitted by the parties, but the fees accounted for the work performed on the unsuccessful Petition for the Writ of Certiorari. *See Hammitt v. Sec'y of Health & Human Servs.,* No. 07-170V (Fed. Cl. Spec. Mstr. June 19, 2007). Petitioners stated that attorneys' fees and costs were awarded in the *Doe* case for fees and costs incurred for the preparation of their unsuccessful petition for writ of certiorari. Pet. Reply at 5 (citing *Doe/11 v. Sec'y of Health & Human Servs.,* 2011 WL 1561437 (Fed. Cl. Spec. Mstr. Apr. 1, 2011). The fees and costs in the *Doe/11* case were also awarded pursuant to a stipulation. Petitioners argue, "even if such petitions (for a Writ of Certiorari)" are rarely granted, it was reasonable for petitioners to file the writ of certiorari, and thus they did not lose reasonable basis after their case was denied rehearing *en banc*. Pet. Reply at 6.

This matter is now ripe for adjudication.

## II.     Legal Standard

### A. Good Faith

Petitioners are entitled to a presumption of good faith as is the government. *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice,* 36 Fed. Cl. at 121. Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5. The good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believe he had a legitimate claim for compensation." *Turner,* 2007 WL 4410030, at *5. Black's Law Dictionary explains that bad faith involves conduct indicating "dishonesty or belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019).

### B. Reasonable Basis

"Good faith" and "reasonable basis" are two distinct requirements. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020); *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective

4

evidence." *Cottingham*, 971 F.3d at 1344. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No.99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding of reasonable basis when petitioner presented only e-mails between her and her attorney).

The Federal Circuit has subsequently held that "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. While the Court in *Cottingham* did not purport to identify all forms of objective evidence, it stated that "objective medical evidence, including medical records… even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Id.* at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). The Court also held that the special master should consider as objective evidence a vaccine package insert, specifically a section titled "Adverse Reactions" which listed several injuries that were also listed in the petitioner's medical records. *Id.* The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances."

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham,* 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010,

5

1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). "Petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

### III. Discussion

#### A. Good Faith

There was no doubt that the petitioners had an honest belief that their son, A.R.D.-C. had a legitimate claim for compensation. Respondent does not argue that petitioners lacked good faith when they brought their initial claim, nor that their claim lacked good faith for the consideration for attorneys' fees and costs. Further, the only issued considered by myself, the Federal Claims Court, and the Federal Circuit was one of statutory interpretation of 42 U.S.C. § 300aa-11(c)(B)(i)(III). *See Dupuch-Carron,* 969 F.3d. at 1325. Accordingly, I conclude that the petitioner's appeals were taken in good faith.

#### B. Reasonable basis

The Vaccine Act permits attorney's fees and costs "incurred in any proceeding on" an unsuccessful "petition filed under section 300aa-11, if that "petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." § 300aa-15(e)(1). It is also true that claim can lose reasonable basis as the case progresses. *Perreira v. Sec'y of Dep't of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994).

Respondent argues that reasonable basis, in this case, was lost after the Federal Circuit denied rehearing and thus, it was unreasonable for petitioner to pursue a petition for writ of certiorari. Resp. Response at 3. Respondent cited to *R.K. v. Sec'y of Health and Human Servs.,* for support of his argument that the reasoning in *Perreira* has been extended to "unreasonable appeals as well." Resp. Response at 5; *R.K. v. Sec'y of Health & Human Servs.,* 760 Fed. Appx. 1010 (2019). In *R.K.,* the petitioners were denied entitlement after a hearing in "an exhaustive" opinion. *R.K.,* at Fed. Appx., * 1011. The Court of Federal Claims denied a motion for review and the Federal Circuit affirmed the decision of the Court of Federal Claims. *See R.K. v. Sec'y of Health & Human Servs.*, 671 F.App'x 792 (Fed. Cir. 2016). When petitioners sought attorneys' fees for work associated with post-hearing motions, the motion for review before the Court of Federal Claims, and the appeal to the Federal Circuit, the special master found that petitioners lacked reasonable basis for pursuing their appeal. *R.K.*, Fed. Appx. at 1012. The petitioners appealed the special master's decision denying attorneys' fees and costs for the work on their appeal to the Federal Circuit. *R.K. v. Sec'y of Health & Human Servs.,* 760 Fed. Appx. 1010 (2019). The Federal Circuit held that the special master did not abuse his discretion in determining that a reasonable basis failed to exist after the Court of Federal Claims issued an opinion finding no error with special master's factual findings and weighing of the evidence. The Court also found that it was reasonable for the special master to determine that the

constitutional challenge brought by *R.K.* had no reasonable basis but reasoned that it was because the Court recently issued a decision in another case on the exact constitutional issue being raised by petitioners on appeal. *Id.* at *1013. The Court stated that "It is undisputed that the [petitioners] were aware of the *Milik* holding and nonetheless continued to raise their constitutional challenge on appeal." *Id.*

Unlike in *R.K.*, where the Federal Circuit had recently issued a decision resolving the exact constitutional question raised by the petitioners' appeal, this case involved a novel issue of statutory interpretation as to whether petitioners met the eligibility requirements of the Vaccine Act. *Dupuch-Carron v. Sec'y of Health & Human Servs.,* 969 F.3d. 1318, 1320 (Fed. Cir. 2020) (The Vaccine Act, 42 U.S.C. § 300aa-11(c)(1)(B)(i), delimits the categories of persons who may pursue a claim under it.). The question presented in the underlying case was one of statutory interpretation that had not been considered by the Federal Circuit and the only other case that contemplated the meaning of this section was the *McGowan* case from 26 years prior. Additionally, since the *McGowan* case, Congress amended the Vaccine Act in 2016 in the 21st Century Cure Act. Pub.L.No. 114-255, 130 Stat. 1033, 1152 (Dec. 13, 2016) which petitioner argued favorably clarified one of the key terms at issue in this case, the word "person" as used in the Vaccine Act section at issue.

*McGowan* had solely focused on the meaning of the word "return," that is used that subsection 11(c)(1)(B)(i). *See McGowan v. Sec'y of Health & Human Servs.,* No. 90-2446V, 1994 WL 879451 (Fed. Cl. Spec. Mstr. May 10, 1994), *mot. for rev. denied,* 31 Fed. Cl. 734, 738 (1994). In *McGowan,* there was no issue as to whether a fetus should be considered a person for purposes of this subsection as the child was a teenager at the time of her vaccination Additionally, because of the amendments to the Vaccine Act by the 21st Century Cures Act, the petitioner argued that the Federal Circuit in this case had to consider whether the child was a "person" *in utero* who had previously been to the United States before considering the meaning of the word "return" in the same subsection. *See Dupuch-Carron,* 969 F.3d at 1325.

As the Federal Circuit in *Amendola* explained that the "Vaccine Compensation Act is [] a complex piece of legislation," and that "ferreting out the meaning of the Act by parsing the language of these several subsections is like trying to understand the Rule Against Perpetuities by reading the Duke of Norfolk's case." *Amendola v. Sec'y of Health & Human Servs.,* 989 F.2d 1180 (Fed. Cir. 1993). Statutory interpretation of this piece of legislation is further complicated when Congress amends the Act. *Id.* at 1182. As evidenced in this case, the Federal Circuit had a different interpretation of the word "person" than the Federal Claims Court and found that the Claims Court had "misinterpreted the relevant language of the Vaccine Act." *Dupuch-Carron,* 969 F.3d at 1325. The Federal Circuit then reviewed the *McGowan* decision and found that "the permanent residence requirement is overly restrictive," but instead reasoned that "some residence is required both before leaving and upon "return [] to the United States" under 42 U.S.C. §300aa-11(c)(1)(B)(III)." *Dupuch-Carron,* 969 F.3d at 1332. Additionally, while petitioners' appeal was pending before the Federal Circuit, petitioners submitted a Citation of Supplemental Authority, which cited the Supreme Court's more recent decision in *Bostock v. Clayton County,* 590 U.S.---, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020). The Federal Circuit acknowledged that petitioners filed Supplemental Authority but did not address it in their final decision. *Dupuch-Carron* at 1333, n. 5.

7

In the petition for writ of certiorari, which I reviewed, petitioners' arguments largely focus on how the Federal Circuit did not interpret the word "return" within the "ordinary public meaning," as outlined by the Supreme Court in *Bostock*. *See Bostock v. Clayton County,* 140 S.Ct.1731, 1738 (2020). While the Supreme Court ultimately denied petitioners writ without comment or an order, with petitioners' eligibility on the line and their eligibility turning on the interpretation of two words, their appeal of the Federal Circuit Court's decision was reasonable. Statutory interpretation is an area of the law that at times, requires the Supreme Court to weigh in, especially when eligibility for benefits or programs may be at stake. When the Supreme Court issues decisions that clarify how statutes should be interpreted, it is reasonable that when the clarification is applied, a different outcome may result. In this case, the use of the words "person" and "return" in the statute, particularly in the context of the amendment to the Act, at a minimum gave rise to a reasonable argument for a statutory interpretation at odds with that determined by the three preceding opinions. The Supreme Court's decision denying petitioners' writ does not provide any insight as to why the Court declined to consider the case and may have just been consistent with the highly selective nature of grants of certiorari by the Supreme Court. In 2020, 5,307 cases were filed before the Supreme Court and only 72 cases were argued before the Court.[3]

Further, had petitioners been successful in their appeal, the objective evidence that they filed with their claim supports reasonable basis. A.R.D-C received vaccines that were manufactured by a vaccine manufacturer located in the U.S., even though they were administered in The Bahamas. Fourteen days later, A.R.D-C was treated for a fever, crankiness, stuffy nose, cough, reduced activity, vomiting and diarrhea. Pet. Ex. 3 at 15-16. Petitioner filed the package insert for the Rotateq vaccine, one of the vaccinations that A.R.D-C received on June 23, 2016. Pet. Ex. 14 at 25. *Cottingham,* 971 F.3d at 1346 (the medical records paired with the…package insert thus constitute at a minimum circumstantial, objective evidence supporting causation."). The package insert includes a list of adverse events that had occurred "at a statistically higher incidence within 42 days of any dose among recipients of RotaTeq," and it listed, "diarrhea, vomiting, otitis media, nasopharyngitis, and bronchospasm," as all possible adverse events. *Id.* Petitioners also submitted a letter from A.R.D-C's treating hematologist, Dr. Maggie Fader, in which she stated that there was no genetic cause for A.R.D-C's hemophagocytic lymphohistiocytosis ("HLH") and that it was "therefore determined [that A.R.D-C] had secondary HLH, which can occur with immunologic activation. As the timing of the onset of illness coincided closely with recent vaccinations, and no other cause was discovered, she concluded that his HLH was triggered by his immunizations." *See* Pet. Ex. 8 at 2. The medical records, the letter from A.R.D-C's treating physician, and the inclusion of information about the vaccine that A.R.D-C received are all objective evidence to support reasonable basis. *See Cottingham,* 971 F.3d at 1346 (citing *Harding v. Sec'y of Health & Human Servs.,* 146 Fed. Cl. 381, 403 (Fed. Cl. 2019) ("Objective medical evidence, including medical records, can constitute evidence of causation supporting a reasonable basis).

---

[3] 2021 Year-End Report of the Federal Judiciary, https://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx (accessed on November 9, 2022).

Thus, the petitioners demonstrated that they had a reasonable basis to pursue their petition for writ of certiorari and I find that petitioner's maintained reasonable basis in pursuing the appeal.

### IV. Attorneys' Fees and Costs

#### a. Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

As explained above, petitioners' case was dismissed, as petitioners were found ineligible under the Vaccine Act, to receive compensation. Additionally, as I found petitioners brought the petition in good faith and with a reasonable basis, petitioners' counsel is still eligible for reasonable attorneys' fees and costs.

Petitioners "[bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.,* 85 Fed. CL. 313, 316-18 (2008). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n.1. The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

#### b. Attorneys' fees

Petitioners' request reimbursement for attorneys' fees in the total amount of $421,403.5, for work performed by attorney, Mr. Curtis Webb and paralegal, Alexander Webb. Fees App. at 7. Petitioners request that Mr. Webb be reimbursed at the following rates for work performed in this case between 2016 and 2021:

| YEAR | HOURLY RATE |
|------|-------------|
| 2016 | $401.00 |
| 2017 | $415.00 |
| 2018 | $430.00 |
| 2019 | $440.00 |
| 2020 | $458.50 |

| | |
|---|---|
| 2021 | $482.00 |

*Id.* at 9. Mr. Webb's hourly rate has approved before by me and other special masters, and I find these rates to be reasonable based on his overall experience as an attorney and his experience in the Vaccine Program. *See Quackenbush v. Sec'y of Health & Human Servs.,* No. 14-1000V, *Garrison v. Sec'y of Health & Human Servs.,* No. 14-762V, 2018 WL 2772179 (Fed. Cl. Spec. Mstr May 3, 2018); *Sharpe v. Sec'y of Health & Human Servs.,* No. 14-65V, 2021 WL 2917247 (Fed. Cl. Spec. Mstr. June 10, 2021).

Additionally, petitioners request that Mr. Webb's paralegal, Alexander Webb, be reimbursed at rates between $50.00 per hour and $155.00 per hour for work performed between 2016-2021. These rates are consistent with the hourly rate that has been previously awarded in the Program, and the rate shall not be reduced. *See Rowan v. Sec'y of Health & Human Servs.,* No. 17-760V, 2020 WL 7869436 (Fed. Cl. Mstr. Nov. 17, 2020); *Anklam v. Sec'y of Health & Human Servs.,* 17-2061V, 2020 WL 4049310, at *2 (Fed. Cl. Spec. Mstr. June 25, 2020).

### c. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [his] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.,* 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 728-29 (2011) (affirming the special masters' reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.,* 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours).

Petitioners' counsel has provided a breakdown of the hours billed and time expended. Fees App. at 11-13; Pet. Attachment ("Attach.") 2 (ECF No. 50). Petitioners' counsel expended a total of 884.2 hours of time and 21 hours of travel on behalf of petitioners. *Id.* at 9. Additionally, petitioners provided a detailed billing statement that explains the tasks performed by counsel and the amount of time devoted to each task. Pet. Attach. at 1-35. At first glance, the number of hours expended by counsel on this case appears to be quite large, however, given the procedural history of this case and the filing requirements by each Court, these hours appear to be reasonable. For example, petitioners state that counsel expended 337.9 hours of time on the appeal to the Federal Circuit, including the Petition for Rehearing *en* banc, and the Petition for Rehearing. Fees App. at 10-11. Therefore, consistent with the above, I award attorneys' fees for all work performed on this case as requested by the petitioners' fee application.

### d. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).

10

Petitioners are requesting a total of $8,972.17 in costs associated with litigating their claim. Fees App. at 14. These costs include the filing fees, fees for obtaining medical records, printing, copies, and for travel expenses associated with oral argument on petitioner's Motion for Review before the Claims Court. These costs are typical in Vaccine Program cases and were reasonably incurred in this matter. Thus, petitioners' attorneys' cost will be awarded in full.

### V.     Conclusion

In conclusion with the foregoing, petitioners' motion for attorneys' fees and costs is **GRANTED.** I find that petitioner is entitled to a reimbursement of attorneys' fees and costs in the full amount requested. Therefore, I award a total of $430,376.02 in attorneys' fees and costs.

**Accordingly, I award a lump sum in the amount of $430,3760.02, representing reimbursement for petitioners' attorneys' fees and costs, in the form of a check payable to petitioners' and their attorney, Mr. Curtis Webb.**

**IT IS SO ORDERED.**

<u>s/Thomas L. Gownen</u>
Thomas L. Gowen
Special Master